UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ANTONIA SANTANA,

                                           Plaintiff,        Case No.: CV 14-4279 (LJS)

                    -against-

JORGE BROWN and ANA MARIA BROWN,

                                Defendants.

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS:**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY
    JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    SUMMARY OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        I.    The Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        II.   The Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        III.   Teresa Knight. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        IV.   The Residence of Ms. Knight. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        V.    The Care of Ms. Knight. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        VI.   Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        I.     The Plaintiff is Exempt from the FLSA. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

i

II.    To the Degree that Companionship Services are Subject to the New York Labor Law, the Fair Labor Standards Act Preempts the Labor Law. . . . . . 8

    A.    The Current Language of the Labor Law was Changed in 2010 to Limit the Reach of the Historical Exemption in the Labor Law for Companionship Workers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    The Current Language of the Labor Law Includes a Limited Exemption for Companionship Employees. . . . . . . . . . . . . . . . . . 10

    C.    The Companionship Services Exemption of the Labor Law is Preempted by the Companionship Services Exemption of the FLSA Because It Conflicts with the FLSA. . . . . . . . . . . . . . . . . . 12

III.    Although the FLSA Allows the States to Regulate the Wages and Hours of Employees, Such Regulation is Limited by the Terms of the FLSA. . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**TABLE OF AUTHORITIES:**

*Federal Statutes:*

29 U.S.C. § 206. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 U.S.C. § 207. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 U.S.C. § 213. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

29 U.S.C. § 213(a)(15). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8, 11, 13, 15

29 U.S.C. § 213(b)(21). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 U.S.C. § 218. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

Fair Labor Standards Act, 29 U.S.C. § 201, et seq.. . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 8, 12, 16

*Federal Regulations:*

29 C.F.R. § 552.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Federal Case law:*

*Arizona v. U.S.*, – U.S. – , 132 S.Ct. 2492 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*In Re MTBE Products Liability Litigation*, 725 F.3d 65 (2d Cir. 2013). . . . . . . . . . . . . . . 12, 13

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 127 S.Ct. 2339 (2007).. . . . . . . . . . . . 11

*Lott v. Rigby,* 746 F.Supp. 1084 (N.D.Ga. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Welding v. Bios Corp.*, 353 F.3d 1214 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . 14

*New York Statutes:*

2010 NY Session Laws Ch. 481. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11, 13

Labor Law § 166. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Labor Law § 170. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Labor Law § 2(16). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14

Labor Law § 2(16)(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Labor Law § 220. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Labor Law § 232. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Labor Law § 651(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Labor Law § 652(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

New York State Labor Law § 1, et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 8, 10, 12-14, 16

*New York Regulations:*

12 N.Y.C.R.R. § 142-2.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Other Authorities:*

Wage and Hour Opinion WH 368, 91 W.H.M. 1031 (Nov. 25, 1975). . . . . . . . . . . . . . . . . . . . . . 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

ANTONIA SANTANA,

                                    Plaintiff,        Case No.: CV 14-4279 (LJS)


                    -against-


JORGE BROWN and ANA MARIA BROWN,

                                    Defendants.

_____

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendants move for summary judgment on all of the plaintiff's claims, both under the Fair Labor Standards Act and the New York State Labor Law.  Under the FLSA, the plaintiff is an exempt employee not covered by either the minimum wage or overtime requirements of that law.  With respect to the Labor Law, it appears that, with respect to domestic workers supplying companionship services, the policy of the Labor Law directly conflicts with the policy of the FLSA.  For this reason, to the degree that the Labor Law might impose liability on the defendants, the FLSA preempts the Labor Law.

## SUMMARY OF THE FACTS

### I.    The Plaintiff

In November 2011, the defendants, JORGE BROWN and ANA MARIA BROWN, hired the plaintiff, ANTONIA SANTANA, to take care of Teresa Knight, a person who Mr. Brown regards as his grandmother.  Defendants' Statement Pursuant to Local Rule 56.1, (hereinafter,

1

"Def. 56.1 Stat.") ¶¶ 1 & 3.  Ms. Santana agreed to care for Ms. Knight around the clock from

Sunday evening to Friday evening at the rate of $400 per week.  Def. 56.1 Stat. ¶ 6.  Ms. Santana

was to care for Ms. Knight at Apartment 1F at 1156 Elder Avenue in the Bronx, New York.  Def.

56.1 Stat. ¶¶ 8 & 26.  Mr. and Mrs. Brown terminated Ms. Santana's employment at the end of

July 2013.  Def. 56.1 Stat. ¶ 9.  During Ms. Santana's employment, the Browns supervised Ms.

Santana's work.  Def. 56.1 Stat. ¶ 10.

## II.    The Defendants

Jorge and Ana Maria Brown are husband and wife.  Def. 56.1 Stat. ¶ 11.  They have

resided together in an apartment located in Jamaica, New York, for 38 years.  Def. 56.1 Stat. ¶

12.  Mr. Brown is a train operator for the New York City Transit Authority.  Def. 56.1 Stat. ¶ 13.

Ms. Brown has long been a full-time home maker. Def. 56.1 Stat. ¶ 14.

## III.    Teresa Knight

Teresa Knight is actually the step-mother of Mr. Brown's father.  Def. 56.1 Stat. ¶ 2.

However, Mr. Brown has always regarded Ms. Knight as his grandmother.   Def. 56.1 Stat. ¶ 3.

She is approximately 92 years old, and suffers from dementia.  Def. 56.1 Stat. ¶¶ 15 & 16.  She

was diagnosed with dementia in about 2010.  Def. 56.1 Stat. ¶ 16.  Although she continues to live

in the apartment which has long been her home, she is not able to care for herself.  Def. 56.1 Stat.

¶¶ 17 & 18. As a result, she has had live-in companions since about May or June 2010.  Def. 56.1

Stat. ¶¶ 18 to 20.

Although Mr. and Mrs. Brown have always taken responsibility for paying the live-in

companions caring for Ms. Knight, including Ms. Santana, the companions are paid out of funds

belonging to Ms. Knight.  Def. 56.1 Stat. ¶¶ 21 to 24.  Mr. Brown has access to Ms. Knight's

funds as a result of a power of attorney. Def. 56.1 Stat. ¶ 25.

### IV.    The Residence of Ms. Knight

Ms. Knight has long resided in Apartment 1F at 1156 Elder Avenue, in the Bronx, New

York.  Def. 56.1 Stat. ¶ 26.  Ms. Knight owns the building, which consists of four units.  Def.

56.1 Stat. ¶¶ 27 & 28. Except for very limited instances where they have been required to

substitute for a companion because of the illness or other personal need of a companion, the

Browns do not reside at this address, though Mr. Brown resided at that address when he was a

child.  Def. 56.1 Stat. ¶¶ 28 & 29.

With the exception of a companion, Ms. Knight lives alone in Apartment 1F.  Def. 56.1

Stat. ¶ 31.  It is a one bedroom apartment with a livingroom, kitchen and bathroom.  Def. 56.1

Stat. ¶ 32.  Ms. Knight sleeps in the bedroom. Def. 56.1 Stat. ¶ 33.  The companion, while on

duty, sleeps in the livingroom.  Def. 56.1 Stat. ¶¶ 34 & 35.  As far as the Browns know, Ms.

Knight's companions have usually maintained residences elsewhere.  Def. 56.1 Stat. ¶ 36.

However, when Ms. Santana began caring for Ms. Knight, the Browns believe Ms. Santana had

no regular residence.  Only after caring for Ms. Knight for a period of time did Ms. Santana take

a room elsewhere.  Def. 56.1 Stat. ¶ 37.

### V.    The Care of Ms. Knight

The primary task that Ms. Knight's companions have is to be present for Ms. Knight.

Otherwise, the companions are free to engage in any activity they wish, as long as they are aware

of Ms. Knight's location and activities.  Def. 56.1 Stat. ¶¶ 38 & 39. However, Ms. Knight is very

limited in her ability to care for herself.  So, the companions assist Ms. Knight with bathing,

dressing and personal grooming.  They prepare meals, and keep the apartment clean.  They might

accompany Ms. Knight to medical appointments.  Def. 56.1 Stat. ¶¶ 40 to 43, 45 to 46, 49 to 49.

Although the companions are not expected to provide medical treatment, they assist Ms. Knight

with taking her medications as prescribed, and would be expected to call for assistance in the

event of a medical emergency.  Def. 56.1 Stat. ¶¶ 50 & 51.

The companions have no responsibility for maintenance of the common areas of 1156

Elder Avenue, not even for shoveling snow off of the sidewalk.  Def. 56.1 Stat. ¶¶ 52 & 53.

## VI.  Procedural History

The plaintiff commenced this matter by filing a complaint with the Court on June 13,

2014.  Even though the summons was returned as executed on August 18, 2014, the plaintiff

never served the defendants, though by Stipulation filed with the court on September 30, 2014,

counsel for the defendants accepted service of the summons and complaint.  Although a

certificate of default was filed by the clerk on September 25, 2014, the defendants answered the

complaint on October 17, 2014.  An initial scheduling conference was held on October 24, 2014,

and a scheduling order concerning this motion and plaintiff's anticipated cross-motion was

entered on December 4, 2014.  Def. Exhibit 3 (Docket History).

## ANALYSIS

The defendants seek dismissal of all of the plaintiff's claims, with prejudice.  With

respect to claims under the FLSA, the defendants are entitled to dismissal of those claims

because the plaintiff is an exempt employee.  With respect to claims under the New York State

4

Labor Law, the defendants believe that the plaintiff is not entitled to the protections of that law because, to the degree that the Labor Law covers employees providing companionship services, the FLSA preempts the Labor Law.

## I.      The Plaintiff is Exempt from the FLSA

Our understanding from our review of the complaint, and from the representations made by the attorneys for the plaintiff is that the plaintiff seeks only the minimum wage under 29 U.S.C. § 206.  Apparently, the plaintiff concedes that she is an "employee who is employed in domestic service in a household and who resides in such household," 29 U.S.C. § 213(b)(21), and is thus exempt from the overtime provisions of the FLSA.

However, the plaintiff continues to argue that she is entitled to the minimum wage under 29 U.S.C. § 207.  We disagree on the basis of 29 U.S.C. § 213(a)(15), which provides in pertinent part, as follows:

> The provisions of sections 206 . . . and section 207 of this title shall not apply with respect to
> —
>
> . . . . .
>
> (15) . . . any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary).

By its terms, this provision would exempt the plaintiff from both the minimum wage (29 U.S.C. § 206) and overtime (29 U.S.C. § 207).  It applies to the plaintiff in this action in that the undisputed facts show that Ms. Santana was hired by the Browns to care for Ms. Knight, a 92 year old woman with dementia who is unable to care for herself.

5

The plaintiff apparently argues that she is still entitled to the minimum wage under the FLSA because 20 percent or more of her time was spent performing household work.  This argument is apparently based upon 29 C.F.R. § 552.6, which defines the term *companionship services*.  The very wording of 29 U.S.C. § 213(a)(15) requires the Court to defer to the U.S. Department of Labor's definition of the technical terms used in that exemption, and one of those terms is *companionship services*.  In any case, 29 C.F.R. § 552.6 provides in pertinent part as follows:

> As used in section 13(a)(15) of the Act [29 U.S.C. § 213(a)(15)], the term *companionship services* shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: *Provided, however*, That such work is incidental, *i.e.*, does not exceed 20 percent of the total weekly hours worked.

(Emphasis in original.)

This regulation clearly provides that an employee's work will fall outside the companionship services exemption if 20 percent or more of the employee's total weekly hours is spent in performing "general household work."  However, the regulation clearly talks about two forms of "household work," one form being exempt and the other possibly not.  We believe plaintiff's argument for removing the plaintiff from the exemption conflates the two forms of household work covered by the regulation.

The regulation first talks of "household work related to the care of the aged or infirm person."  This sort of household work may include "meal preparation, bed making, washing of

clothes, and other similar services." The language of 29 C.F.R. § 552.6 makes clear that household work related to the care of the aged or infirm person is included in the companionship exemption.

The regulation then says that exempt work "may also include the performance of general household work." The use of the word *also* makes clear that general household work is in addition to "household work related to the care of the aged or infirm person." Thus, the other type of household work discussed in 29 C.F.R. § 552.6, general household work, consists of work not related to the care of the aged or infirm person.

The language of the regulation makes clear that all time spent on household work related to the care of the aged or infirm person is included in the exemption. Further, even general household work would fall into the exemption, as long as the amount of such work is limited. If the portion of general household work exceeds 20 percent, then the employee would fall outside of the exemption.

In this case, there is no dispute that Ms. Santana performed household work. We would dispute a claim that 20 percent of Ms. Santana's time was spent performing any type of household work, let alone general household work, but the amount of time Ms. Santana spent on household work is not particularly important in this case because all such work was necessarily related to the care of Ms. Knight. This is necessarily the conclusion because Ms. Knight lived alone in her apartment, with no one else other than Ms. Santana or another companion. As a result, to the degree Ms. Santana performed household work, the work could only be related to the care of Ms. Knight because there was no one else in the apartment who could benefit from

7

such work, and, necessarily, all such work would fall under the companionship exemption.

For the reasons summarized in this section of this memorandum of law, the defendants are entitled to dismissal of all of the plaintiff's claims under the FLSA.

II.     **To the Degree that Companionship Services are Subject to the New York Labor Law, the Fair Labor Standards Act Preempts the Labor Law**

As stated earlier, the defendants believe that, to the extent that the Labor Law appears to impose liability on them for the payment of the minimum wage and overtime to the plaintiff, the Labor Law is preempted by, in particular, 29 U.S.C. § 213(15) because the policies of the Labor Law and the FLSA, with respect to companionship employees, are in direct conflict.  This section of this memorandum of law outlines the reasoning for this position.

A.     **The Current Language of the Labor Law was Changed in 2010 to Limit the Reach of the Historical Exemption in the Labor Law for Companionship Workers**

We would have to concede that a fair reading of the current language of the Labor Law would seem to make the Browns liable for the payment of both the minimum wage and overtime under the Labor Law.  However, the language of the Labor Law did not always dictate this conclusion.

With respect to the minimum wage, the current language of Labor Law provides "Every employer shall pay to each of its employees for each hour worked a wage of not less than . . . $7.15 on and after January 1, 2007."  Labor Law § 652(1).  The Labor Law, for the purposes of the minimum wage, currently defines the term *employee* to include "any individual employed or permitted to work by an employer in any occupation, but shall not include any individual who is employed or permitted to work" in a series of categories, none of which seem to apply to the

work performed by Ms. Santana in this case.  Labor Law § 651(5).  So, the current language of the relevant statutory provisions appears to make anyone employing a companionship employee liable for paying that employee at least the minimum wage.

In 2010, one of the exemptions from Labor Law § 651(5) was changed.  Before this modification, as it applies to the facts of this case, section 651(5) read as follows:

> "Employee" includes any individual employed or permitted to work by an employer in any occupation, but shall not include any individual who is employed or permitted to work:
>
> (a)  . . . [and] who lives in the home of an employer for the purpose of serving as a companion to a sick, convalescing or elderly person, and whose principal duties do not include housekeeping.

*See* 2010 NY Session Laws Ch. 481 § 8 (showing modifications in detail).  In other words, before the change in 2010, the Labor Law provided for a companionship exemption, at least for the minimum wage.

With a few exceptions, including Labor Law § 170, discussed *infra*, *see also* Labor Law §§ 166 (railroad signalmen); 220 (employees on public works projects), 232 (employees of contractors), the language of the Labor Law imposes no liability for overtime.  Generally, employers are liable for the payment of overtime in New York State under state regulatory requirements.  *See* 12 N.Y.C.R.R. § 142-2.2 (the provision creating liability for overtime).  The current language of the relevant overtime regulation limits overtime liability by exempting most employees falling under exemptions contained in 29 U.S.C. § 213.  So, if it were not for Labor Law § 170, companionship employees would be exempt from overtime pursuant to the current language of 12 N.Y.C.R.R. § 142-2.2.

9

The 2010 changes to the Labor Law added a provision to the Labor Law addressing

overtime for domestic service workers. Section 6 of the 2010 Session Law added a new section

170, which provides as follows:

> No person or corporation employing a domestic worker as defined in subdivision
> sixteen of section two of this chapter, shall require any domestic worker to work
> more than forty hours in a week, or forty-four hours in a week for domestic
> workers who reside in the home of their employer; unless they receive
> compensation for overtime work at a rate which is at least one and one-half times
> the worker's normal wage rate.

2010 NY Session Laws Ch. 481 § 6; Labor Law § 170.  The term *domestic worker* is defined as

> [A] person employed in a home or residence for the purpose of caring for a child,
> serving as a companion for a sick, convalescing or elderly person, housekeeping,
> or for any other domestic service purpose.

2010 NY Session Laws Ch. 481 § 2; Labor Law § 2(16).  So, this current statutory language

would appear to impose liability for overtime under the facts of this case.

### B.      The Current Language of the Labor Law Includes a Limited Exemption for Companionship Employees

The Labor Law has an exemption for companionship services.  It was added as section

2(16)(b) of the Labor Law by the Session Law modifying the Labor Law in 2010.  The

companionship services exemption is one of three exemptions in section 2(16), which defines the

term *employee* for the purposes of the entire Labor Law.  The companionship services exemption

reads as follows:

> Domestic worker does not include any individual
>
> . . . . .
>
> (b)      who is engaged in providing companionship services, as defined in
>          paragraph fifteen of subdivision (a) of section 213 of the fair labor

10

standards act of 1938, and who is employed by an employer or
agency other than the family or household using his or her services.

2010 NY Session Laws Ch. 481 § 2; Labor Law § 2(16).  As the language of this provision

clearly shows, the New York State exemption adopts and incorporates into the Labor Law the

companionship exemption established by the FLSA at 29 U.S.C. § 213(15), but the exemption's

language denies the exemption to the family or household of the sick, convalescing or elderly

person.

The language after the conjunctive ("who is employed by an employer or agency other

than the family or household using his or her services") in section 2(16)(b) seems to reflect a

concern with the result of the U.S. Supreme Court's decision in *Long Island Care at Home, Ltd.*

*v. Coke*, 551 U.S. 158, 127 S.Ct. 2339 (2007).  This decision dealt with the companionship

exemption of 29 U.S.C. § 213(15).  Before this decision, there was disagreement over whether

the companionship exemption extended to anyone other than the family or household of the sick,

convalescing or elderly person.  The decision makes clear that the exemption includes companies

and agencies employing and placing companionship employees with families or households with

sick, convalescing or elderly persons.  The decision does nothing to take the exemption away

from families or households directly employing companionship employees.

I believe that the language after the conjunctive is probably a drafting error.  I believe that

the legislature meant to say that the exemption " includes any domestic service worker employed

by an employer or agency other than the family or household using his or her services."  To make

sense of section 2(16)(b), there either has to have been a drafting error, or we have to conclude

that the New York legislature decided to do something that seems rather impolitic by forcing

11

families and households to use companies and agencies placing companionship employees.  I, however, have nothing to support these observations.  As a result, the plain language of the Labor Law seems to require the Court to conclude that there is a companionship exemption in the Labor Law, but it is not available to individuals, families or households seeking to directly hire a companion for an elderly or infirmed person.  Therefore, it would appear that the Browns are liable for the minimum wage and overtime under the Labor Law, but this does not end the analysis.

### C.    The Companionship Services Exemption of the Labor Law is Preempted by the Companionship Services Exemption of the FLSA Because It Conflicts with the FLSA

The doctrine of preemption concerns a constitutional issue under the Supremacy Clause of the Constitution of the United States.  There are two basic types of preemption, express and implied.  *Arizona v. U.S.*, – U.S. – (p. 7), 132 S.Ct. 2492 (2012); *In Re MTBE Products Liability Litigation*, 725 F.3d 65, 96-97 (2d Cir. 2013).  Under express preemption, the federal statute contains a provision which, by its terms, preempts state law.  *Arizona v. U.S.*, – U.S. at (p. 7); *In Re MTBE*, 725 F.3d at 96-97.  Because the FLSA contains nothing specifically preempting state law, express preemption is not implicated in this case.

There are two types of implied preemption, field and conflict.  *Arizona v. U.S.*, – U.S. at (pp. 7-8); *In Re MTBE*, 725 F.3d at 97.  Field preemption is something like express preemption.  Although the federal provision might not contain anything expressly preempting state law, under field preemption, the language and purpose of the federal provision makes clear that it was the intention of Congress to make federal regulation of the field, that is, the subject area, superior to

state regulation of the same area. *Arizona v. U.S.*, – U.S. at (pp. 7-8); *In Re MTBE*, 725 F.3d at 97. Particularly because of 29 U.S.C. § 218, which specifically grants to the states and municipalities the authority to set a higher minimum wage or a lower maximum work week, or to regulate child labor, it would appear that field preemption is not implicated in this case.

That leaves conflict preemption. Conflict preemption also has two branches, impossibility and obstacle. Under impossibility preemption, a person cannot comply with or benefit from a federal provision while also complying with a state provision. Under obstacle preemption, the purpose and operation of the state provision presents an obstacle to achieving the purpose behind the federal provision. *Arizona v. U.S.*, – U.S. at (p. 8); *In Re MTBE*, 725 F.3d at 97. In this case, we believe that both branches of conflict preemption are implicated.

With respect to impossibility preemption, an individual, family or household wishing to employ a companionship employee would not be able to benefit from the federal companionship exemption, 29 U.S.C. § 213(15), because the state provisions concerning such employees imposes liability on these individuals, families and households for both the minimum wage and overtime. In other words, a person cannot both benefit from the federal exemption while at the same time being required to comply with the minimum wage and overtime requirements of the state law. It is impossible to have both.

With respect to obstacle preemption, the preamble and section 1 of the 2010 Session Law modifying the Labor Law makes clear the reason for the changes contained in that law. The New York Legislature wished to extend the benefits of the Labor Law, the Executive Law (the anti-discrimination provisions) and the Workers' Compensation Law to domestic workers because

13

these employees too often seemed to be abused.  We will not argue that the legislature's purpose was anything but salutary, but it conflicts with the purpose of the companionship exemption. The U.S. Congress adopted the companionship exemption in 1974.  The purpose of the exemption was

> [T]o enable guardians of the elderly and disabled to financially afford to have their wards cared for in their own private homes as opposed to institutionalizing them. *Lott v. Rigby,* 746 F.Supp. 1084, 1087 (N.D.Ga. 1990) (citing Wage and Hour Opinion WH 368, 91 W.H.M. 1031 (Nov. 25, 1975)).

*Welding v. Bios Corp.*, 353 F.3d 1214, 1217 (10th Cir. 2004).  This purpose seems to be equally salutary, but it conflicts with the purpose of the Labor Law.  You cannot make it easier for individuals, families and households to employ companionship employees while at the same time increasing the cost of employing such employees by imposing liability for the minimum wage and overtime, especially since Congress decided to make it easier to hire a companionship worker by exempting such employees from the minimum wage and overtime.  In other words, the cost of paying the minimum wage and overtime poses an obstacle to making it easier for individuals, families and households to employ companionship employees.

It might be argued that the Labor Law does make it possible to benefit from the exemption while also complying with the Labor Law.  Rather than directly employing companionship employees, individuals, families and households seeking to employ companionship employees need only seek such employees from companies or agencies placing such employees.  Such companies or agencies are exempt from the minimum wage and overtime provisions of the Labor Law under section 2(16)(b).  This argument, however, overlooks the fact that with corporate-type entities, including non-profit and government entities, comes overhead

14

expenses, including in many cases profit.  These expenses need to be paid by someone.  There is

no guarantee that these costs will be absorbed by the government or third-parties.  They likely

will be passed on either to those seeking companionship employees in higher costs, or to the

companionship employees themselves in the form of lower wages.  If costs are passed on to the

companionship employees, fewer people may be willing to work as companionship employees

because wages would be lower than they already are.  If there are fewer companionship

employees, it may have the effect of making it more difficult to find companionship employees,

and it may also lower the quality of such employees.  Eventually, the shortage of companionship

employees may result in an increase in the cost of such employees.  Thus, the ability to hire

companionship employees through companies and agencies placing such employees would still

not remove the obstacle to achieving the aim of the FLSA's exemption for companionship

employees.

Counsel for the plaintiff may regard this discussion as speculation.  However, it is also

speculation to say that forcing individual, families and households to hire companionship

employees through companies and other agencies would have no effect on costs, employees

quality or both.

Because the Labor Law's companionship exemption conflicts with the FLSA's

exemption for companionship employees, the Labor Law's provision must be considered

preempted by the FLSA provision.

### III.    Although the FLSA Allows the States to Regulate the Wages and Hours of Employees, Such Regulation is Limited by the Terms of the FLSA

Counsel for the plaintiff has argued that there is case law indicating that states may enact laws that exceed the protections of the FLSA.  The defendants cannot wholly reject this argument, but would point out that, when court decisions make this type of observation, they cite to 29 U.S.C. § 218.  This provision states:

> No provision of this chapter . . . shall excuse noncompliance with any . . . State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any . . . State law or municipal ordinance establishing a higher standard than the standard established under this chapter.

29 U.S.C. § 218(a).  In other words, this provision restricts the areas and the manner in which state laws can offer greater wage protections than the FLSA.  According to section 218(a), a state may offer a higher minimum wage, and a lower workweek, but, except for child labor regulations, the states may go no further.

If anything, section 218 reenforces the position that the Labor Law's provisions that seem to remove the exemption for companionship employees is preempted by federal law.  Because the area of exemption is an area not covered by section 218, it is an area in which employers may be excused for non-compliance with state law.

The plaintiff may argue that, in this case, the Labor Law is doing nothing more than is permitted under section 218(a), that is, offering to companionship employees a higher minimum wage and a lower work week than is offered to that class of employees under the FLSA.  We would disagree.  In this case, the applicable provisions are in effect repealing a federal exemption affecting a fairly narrow class of employees and employers.  The repeal of a preemption is something more than merely granting a higher minimum wage to a class of employees already entitled to the minimum wage under the FLSA.  And something more than

16

exemption affecting a fairly narrow class of employees and employers.  The repeal of a preemption is something more than merely granting a higher minimum wage to a class of employees already entitled to the minimum wage under the FLSA.  And something more than merely allowing employees overtime compensation on the basis of a shorter workweek than provided in the FLSA.

## CONCLUSION

On the basis of the foregoing discussion, the defendants respectfully ask that the Court issue an Order granting summary judgment and dismissing the complaint in this matter, with prejudice as to all claims raised in it.

Date: January 19, 2015

DAVID M. LIRA (DL3873)
Attorney for Defendants
700 Shore #3D
Long Beach, NY 11561
(516) 222-2777

17